Docket No. 103140.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

VISION POINT OF SALE, INC., an Illinois Corporation, Appellee,
v. GINGER HAAS *et al.*, Appellants.

*Opinion filed September 20, 2007.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices Fitzgerald, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Chief Justice Thomas took no part in the decision.

**OPINION**

The circuit court of Cook County certified the following question of law:

> "In determining whether 'good cause' exists under Supreme Court Rule 183 for the grant of an extension of time to remedy an unintentional noncompliance with a procedural requirement, may the court take into consideration facts and circumstances of record that go beyond the reason for noncompliance?"

The appellate court answered this question in the affirmative. 366 Ill. App. 3d 692. We granted leave to appeal (210 Ill. 2d R. 315). For the reasons that follow, we disagree with the appellate court. We hold

that in determining whether good cause exists under Rule 183 to support an extension of time allowing a party to comply with a deadline set forth in our rules, the circuit court may not take into consideration facts and circumstances in the case that go beyond the reason for noncompliance. Accordingly, we reverse the judgment of the appellate court and remand this cause to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

This interlocutory appeal has its genesis in a February 2004 complaint filed in the circuit court of Cook County by plaintiff, Vision Point of Sale, Inc., against defendants Legacy Incorporated (Legacy) and Ginger Haas. Both plaintiff and Legacy are engaged in the sale and refurbishing of used point-of-sale equipment,[1] and therefore are in direct competition for customers. In its complaint, plaintiff alleged that it had hired Haas in January 2002 to serve as the executive secretary to plaintiff's Chief Executive Officer Frank Muscarello. According to plaintiff's complaint, Haas had access to plaintiff's confidential and proprietary information, including its customer lists and databases, customer-contact information containing private and cellular telephone numbers and email addresses, and customer order, pricing and equipment information. The complaint alleged that Haas resigned from plaintiff and began employment immediately thereafter with Legacy, taking plaintiff's confidential and propriety information with her. Plaintiff further alleged that "Haas stole such information at the direction or with the encouragement of Legacy," with the ultimate intent of soliciting plaintiff's customers.

Plaintiff's complaint sought damages from both Haas and Legacy for breach of fiduciary duty, tortious interference with plaintiff's business relationships, unjust enrichment, and violation of the Illinois Trade Secrets Act (765 ILCS 1065/1 *et seq.* (West 2002)). Plaintiff requested that the court, *inter alia*, permanently enjoin defendants

---

[1]"Point of Sale" equipment is used by businesses to relay information from one point to another, *i.e.*, from a retail customer checkout station to a centralized inventory management system or to a printer.

from using its confidential and proprietary information for the benefit of Legacy.

Plaintiff also sought a preliminary injunction against defendants, requesting that the circuit court prevent any misappropriation of plaintiff's confidential and proprietary customer information. After conducting an evidentiary hearing on plaintiff's motion, the circuit court entered a preliminary injunction against defendants to maintain the *status quo* pending the outcome of plaintiff's suit. In addition, the circuit court entered several orders that set forth procedures intended to protect plaintiff's confidential information and provided a timetable by which the court expected defendants' compliance.[2]

For the next several months, the litigation between the parties focused upon defendants' failure to comply with the court's preliminary injunction orders. As a result, the circuit court held additional hearings and entered another order detailing with greater specificity the method by which its preliminary injunction order was to be implemented, including an updated timetable for compliance.

During this period, proceedings with respect to plaintiff's complaint for a permanent injunction were also moving forward. On December 14, 2004, defendants sent to plaintiff their "Rule 216 Request for Admission of Facts," which consisted of 65 separate requests for admission. Defendants did not file their requests to admit with the clerk of the circuit court of Cook County at the time of service, contrary to Rule 3.1(c) of the circuit court of Cook County (Cook Co. Cir. Ct. R. 3.1(c) (eff. May 1, 1996)). Plaintiff timely responded to each of defendants' requests to admit on January 12, 2005. The final page of plaintiff's responses was signed by plaintiff's counsel on behalf of plaintiff. On the page immediately following the last page of responses, Muscarello signed a verification of the responses, which tracked the language set forth in section 1–109 of the Code of Civil Procedure (735 ILCS 5/1–109 (West 2002)).

---

[2]For example, the court ordered Legacy, *inter alia*, to purge all of plaintiff's customer information from its computer system and required Legacy to allow on-site inspections by plaintiff's computer experts to verify the removal.

On April 1, 2005, defendants filed their "Motion to Strike Plaintiff's Responses to First Set of Requests to Admit and to Deem Facts Admitted." Defendants asserted that because plaintiff's responses to the requests to admit were deficient, the responses should be stricken and the facts set forth by defendants in the requests be deemed admitted under Supreme Court Rule 216 (134 Ill. 2d R. 216). Defendants maintained that plaintiff's responses were defective because, although they were verified by Muscarello in accordance with section 1–109 of the Code of Civil Procedure (735 ILCS 5/1–109 (West 2002)), the final page of the responses themselves did not contain a signature of plaintiff, but only that of plaintiff's attorney. Defendants asserted that Rule 216 and the appellate court's decision in *Moy v. Ng*, 341 Ill. App. 3d 984 (2003), require that a party must sign the final page of the responses, and that a separate section 1–109 verification–absent a party's signature on the responses' final page–is insufficient. In addition, defendants contended that the responses were deficient in that they violated Rule 3.1(c) of the rules of the circuit court of Cook County (Cook Co. Cir. Ct. R. 3.1(c) (eff. May 1, 1996)), which requires that responses to requests to admit must be filed with the clerk of the circuit court. Finally, defendants maintained that plaintiff could not establish "good cause" for any extension of time to remedy these deficiencies pursuant to Supreme Court Rule 183 (134 Ill. 2d R. 183).

The circuit court granted defendants' motion to strike plaintiff's responses to defendants' request to admit and to deem those facts admitted. The court found that plaintiff's responses were deficient in that they failed to comply with *Moy* and Rule 3.1(c) of the circuit court of Cook County. At the conclusion of the court's ruling, counsel for plaintiff orally moved, pursuant to Rule 183, for leave to allow plaintiff further time to serve and file a set of amended responses, which, in addition to containing the section 1–109 verification, would also contain the signature of Muscarello on the last page of the responses. Counsel argued that the "good cause" required to be shown under Rule 183 to support this motion was a good-faith reading of section 1–109 of the Code of Civil Procedure, which appeared to allow the use of a verification in submitting responses to requests to admit. The circuit court denied counsel's motion.

After the circuit court ruled on the request-to-admit issue, the litigation between the parties proceeded. The defendants' alleged continued failure to comply with the circuit court's preliminary injunction rulings served as the basis for several contested motions and additional court hearings. During the course of one of these hearings, the circuit court expressed frustration with respect to what it characterized as defendants' "settled policy of recalcitrance" with regard to their lack of compliance with these earlier rulings. This frustration, coupled with the court's view that plaintiff's responses to defendants' requests to admit were deficient only as a result of a "technical and inadvertent failure," caused the circuit court to *sua sponte* reconsider and vacate its prior ruling granting defendants' request to deem facts admitted and refusing to allow plaintiff an extension of time pursuant to Rule 183 to serve and file an amended response to the requests to admit. The circuit court now determined that under the totality of circumstances in the case, good cause existed under Rule 183 for the time extension requested by plaintiff.

Defendants objected to the circuit court's ruling allowing plaintiff additional time under Rule 183 to amend its responses. Defendants argued that the circuit court's inquiry in determining whether to grant a time extension pursuant to Rule 183 is limited to examining only whether plaintiff established good cause for its noncompliance with the deadline, and that the court had erred in focusing upon defendants' own, unrelated conduct. Accordingly, defendants moved that the circuit court certify this issue for interlocutory appeal under Rule 308(a) (155 Ill. 2d R. 308). The circuit court thereafter certified the question of law previously identified at the outset of this opinion.

The appellate court granted defendants' petition for leave to appeal. 366 Ill. App. 3d 692. The appellate court held that when deciding whether to grant an extension of time for filing a response to a request to admit facts, the circuit court "may consider any facts that help it 'strike a balance between diligence in litigation and the interests of justice.' [Citation.]" 366 Ill. App. 3d at 694. Accordingly, the appellate court further held that a circuit court "need not restrict its attention to the causes for the delay in the response to the request to admit" in determining whether to grant an extension of time under Rule 183. 366 Ill. App. 3d at 694.

This court allowed defendant's petition for leave to appeal (210 Ill. 2d R. 315).

ANALYSIS

In order to answer the certified question, we must construe Rule 183 and, to some extent, Rule 216 as well. Our Rule 183 provides:

> "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." 134 Ill. 2d R. 183.

Our Rule 216 provides, in pertinent part:

> "(a) Request for Admission of Fact. A party may serve on any other party a written request for the admission by the latter of the truth of any specified relevant fact set forth in the request.
>
> ***
>
> (c) Admission in the Absence of Denial. Each of the matters of fact *** of which admission is requested is admitted unless, within 28 days of service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part. If written objections to a part of the request are made, the remainder of the request shall be answered within the period designated in the request. A denial shall fairly meet the substance of the requested admission. If good faith requires that a party deny only a part, or requires qualification, of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder. Any objection to a request or to an answer shall be heard by the

-6-

court upon prompt notice and motion of the party making the request." 134 Ill. 2d R. 216.

It is well settled that our rules are to be construed in the same manner as statutes (134 Ill. 2d R. 2; *People v. Norris*, 214 Ill. 2d 92, 97 (2005); *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998); see also *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 48 (2004) (setting out rules of construction)), and our review is *de novo* (*In re Storment*, 203 Ill. 2d 378, 390 (2002)).

Both parties acknowledge that this court last interpreted the good-cause requirement contained within Rule 183 in *Bright v. Dicke*, 166 Ill. 2d 204 (1995). The parties disagree, however, on its application to the question presented here. Defendants initially contend that since *Bright*, this court has moved away from considering Rule 216 requests to admit as part of the discovery process and, for that reason, the circuit court's usual discretion is more limited in this context than it is with respect to other discovery tools. In addition, defendants maintain that to the extent that *Bright* is still good law, the appellate court's analysis is at odds with it.

Plaintiff, on the other hand, argues that the appellate court's analysis must be upheld because in the time period since *Bright*, certain other decisions of the appellate court have served to narrowly define the good-cause requirement contained in Rule 183 when the rule is used to seek an extension of time for compliance with Rule 216. Plaintiff suggests that the analysis utilized by the appellate court here properly restores to the circuit court, for purposes of Rule 183 and Rule 216, the discretion this court chose to vest in it in *Bright*.

Given the parties' arguments, it is helpful to begin our analysis with a detailed discussion of this court's opinion in *Bright*. There, we answered a question of law certified for interlocutory review pursuant to Rule 308(a) concerning whether a circuit court has discretion under Rule 183 to allow a party to file a late response to a Rule 216 request to admit. We held that Rule 183 vests the circuit court with discretion to allow a party to serve a response to requests to admit after the expiration of the 28-day period specified in Rule 216. *Bright*, 166 Ill.

2d at 208.[3] We explained that because Rule 216 requests for admission are "essentially a discovery tool" (*Bright*, 166 Ill. 2d at 208), a contrary holding that a circuit court could not grant parties additional time to respond under Rule 216 would "not only conflict with the plain language of Rule 183, it would also be inconsistent with our view that circuit courts must be allowed to exercise discretion over the conduct of pretrial discovery." *Bright*, 166 Ill. 2d at 208, citing *Sohaey v. Van Cura*, 158 Ill. 2d 375, 381 (1994).

Having construed Rule 183 to allow a circuit court discretion to permit a party to file a late response to a Rule 216 request to admit, this court then considered, in the interests of judicial economy and the need to reach an equitable result, the propriety of the order that gave rise to the appeal. *Bright*, 166 Ill. 2d at 208. The defendant had originally submitted a procedurally deficient response to the plaintiff's requests for admission under Rule 216. Subsequently, the defendant moved for leave to file an amended response after the time deadline contained within Rule 216 had passed. We noted that, in support of her motion, the defendant

> "presented a chronology of events pertaining to her response[ ] [but] offered no explanation, however, as to why the 28-day deadline was not met ***. [The defendant's] position was simply that the court should grant her motion because the requested admissions relate to central issues in the case and allowing her to make an untimely response would not prejudice [the plaintiff]." *Bright*, 166 Ill. 2d at 206.

The circuit court denied the defendant's motion on the basis that good cause had not been shown to justify the grant of an extension of time pursuant to Rule 183.

In upholding the ruling of the circuit court, we emphasized that a circuit court's discretion to permit a late response "does not come into play under the rule unless the responding party can first show good cause for the extension." *Bright*, 166 Ill. 2d at 209. Because the *Bright* defendant had offered no explanation as to why she was unable to comply with the time deadline set forth in Rule 216, we concluded

---

[3]We note that the current language in both rules remains unchanged from the time we reviewed it in *Bright*.

that she failed to satisfy the good-cause prerequisite for relief found in Rule 183. *Bright*, 166 Ill. 2d at 209.

We rejected the argument advanced by the defendant that the issue of good cause should be considered *only* if the nonmovant could show that allowing the late response would result in harm. *Bright*, 166 Ill. 2d at 209. We held that the procedure advocated by the defendant would improperly reverse the burden of proof, and that "the party opposing such a motion should be under no obligation to show anything." *Bright*, 166 Ill. 2d at 210. Accordingly, we instructed that the "mere absence of inconvenience or prejudice to the opposing party is not sufficient to establish good cause under Rule 183." *Bright*, 166 Ill. 2d at 209. We further held that when a circuit court is ruling upon a request for extension pursuant to Rule 183, "the general rule pertains: the burden of establishing grounds for relief is on the party requesting the additional time" and that "[n]onmoving parties such as [the plaintiff] should not be required to justify application of a rule before it will be given effect." *Bright*, 166 Ill. 2d at 210. Accordingly, we held that the circuit court correctly denied the defendant's motion for extension pursuant to Rule 183.

*Bright* thus stands for the proposition that, under the plain language of Rule 183, a trial court in its sound discretion may extend the time to allow a party to comply with the requirements of Rule 216 after the time deadline for compliance has expired if the delinquent party establishes good cause for its noncompliance. As was noted in *Bright*, the fundamental principles which animate our Rule 183 have long been part of our case law: circuit courts must be allowed to exercise their sound discretion over the course and conduct of the pretrial discovery process. *Bright*, 166 Ill. 2d at 208; see also *Sohaey*, 158 Ill. 2d at 380-83.

In light of our holding in *Bright*, we must necessarily reject defendants' assertion that we, in our subsequent decision in *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224 (1998), distanced ourselves from *Bright* by holding that requests to admit are not part of the discovery process. Initially, defendants ignore that immediately after we announced our decision in *Bright*, we amended our Rule 201–entitled "General Discovery Provisions"–which vests trial courts with broad powers to supervise the discovery process in order to prevent abuse (166 Ill. 2d R. 201). Specifically, we amended

subsection (a) of Rule 201 to include requests to admit within the definition of "discovery methods." 166 Ill. 2d R. 201(a). This amendment clearly reinforced our statement in *Bright* that requests for admission are part of the discovery process. *Bright*, 166 Ill. 2d at 208.

In addition to overlooking our amendment to Rule 201, defendants read *P.R.S.* far too narrowly. *P.R.S.* involved a question different from that presented both in *Bright* and in the matter before us: "whether a party's failure to respond to a request for admission pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216) results in a judicial admission even where the requested admission relates to 'ultimate facts' or to 'legal conclusions.' " *P.R.S.*, 184 Ill. 2d at 226. In the course of answering that question, we stated:

> "Although requests to admit are often classified as a discovery device and treated as such in practice (*Bright*, 166 Ill. 2d at 208), 'the purpose of admissions is not to discover facts but rather to establish some of the material facts in a case without the necessity of formal proof at trial.' Requests to admit are 'a device by which "to separate the wheat from the chaff" ' and are 'intended to circumscribe contested factual issues in the case so that issues which are disputed might be clearly and succinctly presented to the trier of facts.' 23 Am. Jur. 2d §314 (1983)." *P.R.S.*, 184 Ill. 2d at 237.

Our rulings in *Bright* and *P.R.S.* were intended to underscore that the concept of "discovery" is not one-dimensional, a view supported by the fact that several definitions exist for this term. For example, Black's Law Dictionary defines "discovery" as "[t]he act or process of finding or learning something that was previously unknown." Black's Law Dictionary 498 (8th ed. 2004). Defendants appear to rely upon this definition in asserting that requests to admit do not constitute "discovery," as they do not serve the purpose of uncovering new and unknown information. However, Black's also defines "discovery" as "[c]ompulsory disclosure, at a party's request, of information that relates to the litigation," and states that "[t]he primary discovery devices are interrogatories, depositions, requests for admissions, and requests for production." Black's Law Dictionary 498 (8th ed. 2004). This definition of "discovery" corresponds with our discussion in *P.R.S.* wherein we stated that requests to admit are useful "to separate the wheat from the chaff" with the purpose of

-10-

narrowing the actual contested issues in the case so that they might be clearly and succinctly presented to the trier of fact. *P.R.S.*, 184 Ill. 2d at 237. This concept is also consistent with our long-held belief that discovery is to be "utilized to 'illuminate the actual issues in the case' " (*Owen v. Mann*, 105 Ill. 2d 525, 530 (1985), quoting *Sarver v. Barrett Ace Hardware, Inc.*, 63 Ill. 2d 454, 460 (1976)), as well as to "narrow the issues in order to expeditiously reach a disposition which fairly vindicates the rights of the parties" (*Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 65 (1995)). In light of the above, we therefore disagree with defendants' assertion that Rule 216 requests to admit are not "discovery." We hold, as we did in *Bright*, that requests for admission constitute discovery.

We next address whether the analysis of the appellate court is, as defendants suggest, at odds with *Bright*. The parties disagree over the scope of the inquiry a circuit court may engage in when determining whether good cause has been established to support a time extension pursuant to Rule 183. In addition, the parties also dispute whether our case law has developed a blanket prohibition against raising certain factors in support of a good-cause argument.

Plaintiff relies upon the opinion of the appellate court below to support its position that when ruling upon a Rule 183 motion to allow an extension of time with respect to deadlines set forth in Rule 216, a circuit court is entitled to consider all of the circumstances of a case–including any unrelated conduct of the opposing party occurring during the litigation–in determining whether "good cause" exists to grant an extension of time to the noncompliant party. According to plaintiff, our decision in *Bright* supports this reasoning, as there is no language in that opinion which limits the court's examination solely to whether the noncompliant party had good cause for failing to meet the deadline. Because plaintiff maintains that a circuit court may consider the totality of the circumstances of the entire case in determining whether good cause has been established, plaintiff concludes that the appellate court correctly answered the certified question in the affirmative.

Both plaintiff and the appellate court below, however, overlook the fact that in *Bright* we concluded that it is the party moving for an extension of time pursuant to Rule 183 who must bear the burden of establishing good cause for the court to grant the time extension and

who must submit to the court clear, objective reasons why it was unable to meet the original deadline and why an extension of time should be granted. For this reason, the appellate court's analysis here, which focused on reasons wholly unrelated to why plaintiff failed to meet the deadline in the first place, is at odds with *Bright*. In our view, the assessment of whether a delinquent party has established good cause to allow the circuit court to excuse that party's noncompliance with the deadlines set forth in Rule 216 may not be so broad as to include the entire "totality of the circumstances" of the case up to that point, including the unrelated conduct of the nonmoving party. To hold otherwise would transform the Rule 183 good-cause determination into an open-ended inquiry allowing matters irrelevant to the discovery process to improperly permeate the analysis. Rather, we believe the better approach is one where the delinquent party presents objective reasons to the court as to why the deadline was not met.

That said, we believe plaintiff's contentions regarding the appellate court's treatment, post-*Bright*, of the Rule 183 inquiry deserve some consideration. Plaintiff suggests that the analysis offered by the appellate court below is the only way to ameliorate the often harsh results stemming from a series of post-*Bright* decisions which have created a "trap for the unwary" by unduly limiting the good-cause inquiry contemplated by this court in *Bright* by holding that "mistake, inadvertence, or attorney neglect" cannot constitute the sole basis for a good-cause determination. See, *e.g.*, *Hammond v. SBC Communications, Inc. (SBC)*, 365 Ill. App. 3d 879, 893 (2006); *Robbins v. Allstate Insurance Co.*, 362 Ill. App. 3d 540, 544 (2005); *Larson v. O'Donnell*, 361 Ill. App. 3d 388, 396 (2005); *Cothern v. Thompson*, 356 Ill. App. 3d 279, 283-84 (2005); *Glasco v. Marony*, 347 Ill. App. 3d 1069, 1073 (2004).

The appellate court's opinion in *Hammond* provides a good example of the reasoning espoused in this line of cases. There, the court identified factors to consider in deciding the propriety of a circuit court's ruling on a Rule 183 good-cause extension. The court first noted that, based upon *Bright*, Rule 183 allows a trial court to grant extensions with respect to the deadlines in Rule 216 as long as good cause is shown. The court then set forth the test it believed should be used to determine good cause:

"That is, the responding party cannot rely upon the 'mere absence of inconvenience or prejudice to the opposing party' (*Bright*, 166 Ill. 2d at 209) or mistake, inadvertence, or attorney neglect as the sole basis for a good-cause determination (*Larson*, 361 Ill. App. 3d at 396), but must, instead, assert some independent basis for allowing the untimely response (*Bright*, 166 Ill. 2d at 209; *Larson*, 361 Ill. App. 3d at 395)." *Hammond*, 365 Ill. App. 3d at 893.

As is evident from this excerpt from *Hammond*, our appellate court over time has melded our narrow holding in *Bright*–that the mere absence of inconvenience or prejudice to the nonmoving party alone is insufficient to satisfy the good-cause requirement–with a second, broader, harsher, and apparently inflexible standard that "mistake, inadvertence, or attorney neglect" on the part of the moving party can never serve as the sole basis for establishing good cause to support an extension pursuant to Rule 183. This, in turn, means that under this line of case law, unless the party can present evidence separate and apart from mistake, inadvertence, or attorney neglect to support an argument that there was good cause for the initial delay in compliance, the extension will not be granted. Because Rule 216 provides that failing to respond to a request to admit deems the requested facts admitted (134 Ill. 2d R. 216; *P.R.S.*, 184 Ill. 2d at 236), in most instances this result may prove fatal to the case of the delinquent party.[4]

Although we agree with plaintiff that the rule which has developed from this line of cases is unduly harsh, we disagree that the answer is to endorse the analysis proffered by the appellate court below. We

---

[4]Indeed, the harsh consequences which may result upon application of the appellate court's blanket rule that "mistake, inadvertence, or attorney neglect" may not be considered has engendered substantial negative discussion from commentators. See, *e.g.*, S. Wood, *An Inconvenient Truthiness About Rule 216*, Chicago Lawyer, December 2006, at 26, 62 (questioning "whether the point of Rule 216 is to obtain information or to set a trap in hope of winning by default"); J. Hynes, *Admission of Facts in Discovery: Avoiding the Rule 216 Trap*, 93 Ill. B.J. 402, 406 (2005) (noting that "[s]ince *Bright*, no reported appellate case has found 'good cause' for an untimely response to a request to admit").

initially note that we never held in *Bright* that factors such as mere inadvertence or mistake are insufficient as a matter of law to constitute good cause under Rule 183. As we explained above, *Bright* stands for the proposition that, like in any other motion, the movant in a Rule 183 motion bears the burden of sustaining its grounds, and rejected the defendant's assertion that as long as the nonmovant was not harmed, a Rule 183 motion to extend time should be granted. Accordingly, it follows that in *Bright*, we held that issues dealing with the nonmoving party–such as whether the nonmovant was inconvenienced or suffered prejudice–were not the proper inquiry in ruling on a Rule 183 motion, and therefore determined that good cause is not synonymous with the nonmovant's lack of harm. This holding was meant to underscore our strong rejection of the defendant's argument in that case, and the opinion was tailored to address whether the circuit court properly determined that the "good-cause" requirement had been met on those specific facts. We did not hold–as the appellate court subsequently has–that there is a blanket rule that mistake, inadvertence, or attorney neglect on the part of the moving party can never form the basis of a good-cause argument that a Rule 183 time extension should be granted. Indeed, these types of reasons properly focus the circuit court's inquiry on the conduct of the proper party–the movant.

By grafting this blanket prohibition onto our holding in *Bright*, the appellate court has created what has proved to be an unworkable analytical framework that is unduly severe. As defendants note in their brief, several groups within the legal community have submitted proposals to amend Rule 216 in an effort to soften the adverse effects on litigation which have followed in the wake of these appellate court decisions. For example, our examination of the transcript of the public hearings held by our Rules Committee on this issue reveals that much of the concern stems from the application of the blanket prohibition developed by the appellate court–a prohibition repeatedly characterized as "draconian"–rather than from the actual language in Rule 216. Those testifying at the hearing generally agreed that even the best of lawyers may make a technical or inadvertent mistake, and that such conduct should not serve as an automatic basis for denying a good-cause motion for extension of time, especially since a failure to respond to a request to admit deems the requested facts admitted.

-14-

Indeed, the case before us is illustrative of the problems both practitioners and jurists have faced with respect to the harsh results often obtained under the appellate court's engrafted rule. Rather than assisting the circuit court in exercising its sound discretion in determining whether a delinquent party has established good cause to justify an extension pursuant to Rule 183, this after-decided rule has improperly limited the discretion of our circuit courts in considering objective evidence which may be relevant to the court's good-cause decision. We note that there is a broad overall policy goal of resolving cases on the merits rather than on technicalities (see, *e.g.*, *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998) (in resolving discovery disputes, the goal is to "insure[ ] both discovery and a trial on the merits")), and that the post-*Bright* line of appellate court cases run directly counter to this principle.

Rather than endorse, as plaintiff suggests, the analysis of the appellate court below, we believe the problems identified by plaintiff are best resolved by this court today clarifying that we have never held in this context that "mistake, inadvertence, or attorney neglect" is automatically excluded from the trial court's consideration in determining whether good cause exists to grant an extension of time pursuant to Rule 183. Accordingly, those appellate court decisions which have grafted this standard onto the analysis we set forth in *Bright* (see, *e.g.*, *Hammond v. SBC Communications, Inc. (SBC)*, 365 Ill. App. 3d 879, 893 (2006); *Robbins v. Allstate Insurance Co.*, 362 Ill. App. 3d 540, 544 (2005); *Larson v. O'Donnell*, 361 Ill. App. 3d 388, 396 (2005); *Cothern v. Thompson*, 356 Ill. App. 3d 279, 283-84 (2005); *Glasco v. Marony*, 347 Ill. App. 3d 1069, 1073 (2004)) are overruled.

As a final argument, plaintiff contends that the analysis used by the appellate court below should be upheld on the basis that it ensures that a recalcitrant party will not reap the benefit of its noncompliance with court orders. We are not unsympathetic to the frustration experienced both by the circuit court and by the opposing party if one party in the case engages in recalcitrant behavior. But, we have long held that "[a] court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings." *People v. Warren*, 173 Ill. 2d 348, 368 (1996); see also *In re Baker*, 71 Ill. 2d 480, 484 (1978) (citing cases). In addition, our Rule 219(c) (166 Ill. 2d R.

219(c)) "authorizes a trial court to impose a sanction, including dismissal of the cause of action, upon any party who unreasonably refuses to comply with any provisions of this court's discovery rules or any order entered pursuant to these rules." *Shimanovsky*, 181 Ill. 2d at 120. We stress, however, that a party's recalcitrance in complying with an order of the circuit court is an issue separate and apart from the issue of whether a party has established good cause under Rule 183 to request an extension of time to comply with a deadline found within this court's rules.

In sum, we answer the certified question by holding that in determining whether good cause exists under Rule 183 for the grant of an extension of time to remedy an unintentional noncompliance with a procedural requirement, the circuit court may not take into consideration facts and circumstances of record that go beyond the reason for noncompliance. Rather, we reaffirm *Bright*'s holding that the plain language of Rule 183 specifically makes good cause a prerequisite to relief, and that the burden of establishing good cause rests on the party seeking relief under Rule 183. The circuit court has the sound discretion to consider all objective, relevant evidence presented by the delinquent party with respect to why there is good cause for its failure to comply with the original deadline and why an extension of time should now be granted. The circuit court may receive evidence with respect to whether the party's original delinquency was caused by mistake, inadvertence, or attorney neglect, but may not engage in an open-ended inquiry which considers conduct that is unrelated to the causes of the party's original noncompliance. We decline, however, to specifically define what constitutes good cause within this context, as that determination is fact-dependent and rests within the sound discretion of the circuit court. Absent an abuse of discretion, the decision of the circuit court on this issue will not be disturbed. See *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002).

Having answered the question of law certified for appeal, we next consider the propriety of the circuit court order that gave rise to these proceedings. As in *Bright*, we here engage in this review in the interests of judicial economy and the need to reach an equitable result. See *Bright*, 166 Ill. 2d at 208.

Counsel for plaintiff requested that the circuit court allow plaintiff a good-cause extension under Rule 183 to prepare an amended set of responses to defendants' requests to admit after the circuit court found that the responses submitted by plaintiff were deficient for two separate reasons. As a result of finding plaintiff's responses deficient on these two grounds, the circuit court struck plaintiff's responses and deemed the facts within defendants' requests admitted. We address each of the findings of the circuit court *seriatim*.

First, the circuit court determined that plaintiff's responses were deficient in that the final page of the responses was not signed by plaintiff, even though Muscarello, on the very next page, verified the responses by certification under penalty of perjury in accord with section 1–109 of the Code of Civil Procedure (735 ILCS 5/1–109 (West 2002)). Defendants contend that the circuit court correctly ruled that plaintiff's responses were deficient because they lacked plaintiff's signature on their final page. As they did in the circuit court, defendants premise this argument upon the appellate court's decision in *Moy*, wherein the court held that because Rule 216 "requires response by the parties" (*Moy*, 341 Ill. App. 3d at 989), this means that "the party responding to the Rule 216 request must sign the answer and provide the sworn-to statement and that the signed and sworn-to copy of the answer served on the requesting party must be signed and sworn to by the party." *Moy*, 341 Ill. App. 3d at 990. In response, plaintiff–also reprising the argument it made before the circuit court–contends that the holding in *Moy* finds no support in the language of Rule 216. According to plaintiff, the provisions allowing verification by certification found in section 1–109 of the Code of Civil Procedure are applicable to responses to requests to admit, and that the responses it filed in this case–which were certified for their accuracy under penalty of perjury by its CEO–satisfied the requirements of Rule 216. We agree with plaintiff.

We find that the requirement stated by the *Moy* court that "the party responding to the Rule 216 request must sign the answer *and* provide the sworn-to statement" (emphasis added) (*Moy*, 341 Ill. App. 3d at 990) has no support in the language of Rule 216. There is nothing in Rule 216(c) which requires a party to both verify and "sign" the final page of its denials to the requests to admit of an opposing party. Rather, the plain language of the rule states that the

party to whom the requests to admit are directed must serve upon the requesting party either "a sworn statement" denying the matters of which admission is requested or written objections which need not be sworn. Here, plaintiff's responses were verified by Muscarello in language which tracked section 1–109 of the Code of Civil Procedure. Section 1–109 provides that whenever a "document or pleading filed in any court of this State is required or permitted to be verified, or made, sworn to or verified under oath, such requirement or permission is hereby defined to include a certification of such pleading, affidavit or other document under penalty of perjury as provided in this Section." 735 ILCS 5/1–109 (West 2002). Adding an unsworn signature to a document that is already sworn to under oath by virtue of the section 1–109 verification by certification does nothing to make that document more binding or effective. We therefore hold that the section 1–109 verification constituted the very "sworn statement" that Rule 216 requires. To the extent that the *Moy* case holds otherwise, that decision is overruled.

In addition to finding plaintiff's responses deficient on the ground that the last page of that document did not contain plaintiff's signature, the circuit court also ruled that plaintiff's responses were deficient in that they failed to comply with Rule 3.1(c) of the circuit court of Cook County. Rule 3.1(c) provides:

> "(c) Requests for admission of fact shall be filed with the Clerk of the Circuit Court. Within twenty-eight (28) days after service of the requests, the answering party shall serve upon the party requesting the admission and file with the Clerk of the Circuit Court either a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why the party cannot truthfully admit or deny those matters or a written objection to each request." Cook Co. Cir. Ct. R. 3.1(c) (eff. May 1, 1996).

As they did in the circuit court, both parties continue to dispute the applicability of this rule. Defendants maintain that pursuant to Rule 3.1(c), responses to a party's request to admit must be both served upon the requesting party *and* filed with the clerk of the circuit court. In addition, defendants contend that, under the appellate court's

decision in *Moy,* the filing requirement under Rule 3.1(c) does not conflict with the provisions set forth in our Rule 216. We disagree.[5]

The Illinois Constitution provides that "[g]eneral administrative and supervisory authority over all courts is vested in the Supreme Court." Ill. Const. 1970, art. VI, §16. This court has long held that although circuit courts share some authority with this court to make rules, the rules promulgated by the circuit court are subject to review by this court and may not conflict with this court's rules. *People ex rel. Bernat v. Bicek*, 405 Ill. 510, 521-22 (1950) ("[i]nferior courts may adopt rules to facilitate procedure and practice before them, but such rules must be reasonable and subject to review by the Supreme Court"). Our Rule 21(a) codifies these long-held principles by vesting the circuit courts with the power to adopt local rules governing civil and criminal cases so long as: (1) they do not conflict with supreme court rules or statutes, and (2) so far as practical, they are uniform throughout the state. 134 Ill. 2d R. 21(a). Circuit courts, however, "are without power to change substantive law or impose additional substantive burdens upon litigants." *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 491 (1988); see also *Kinsley v. Kinsley*, 388 Ill. 194, 197 (1944).

In *Bright*, we emphasized that, under the plain language of Rule 216(c), "service, rather than filing, is what matters." *Bright*, 166 Ill. 2d at 207. We explained:

> "Rule 216(c) only requires that responses to requests for admissions be *served* on the opposing party within the specified time period. When a response is filed with the court is irrelevant. Indeed, filing is not even necessary under the rule. The only purpose it serves is to help document when a responding party has acted within the rule's time limits." (Emphasis in original.) *Bright*, 166 Ill. 2d at 207.

---

[5]We note, parenthetically, that although defendants demand that plaintiff must strictly adhere to the filing provision in Rule 3.1(c), that provision applies equally to the party requesting the admitted facts. Therefore, we find it disingenuous that although defendants vigorously argue that plaintiff's responses should be stricken because they were not filed in accordance with this local rule, defendants themselves failed to comply with this very rule by not filing their requests for admission with the clerk of the court.

Therefore, *Bright* made service the operative event and discounted the filing of responses to requests for admission as having minimal legal significance.

In the instant appeal, the parties do not dispute that plaintiff's responses to defendants' requests to admit were timely served. This is the only action required pursuant to Rule 216 and *Bright*. To the extent that Rule 3.1(c) of the circuit court of Cook County requires that the responses be filed within a certain period, and is read to require the striking of a response to requests to admit that is timely served but not filed, that rule impermissibly imposes additional substantive burdens upon the litigants. See *Finley*, 119 Ill. 2d at 491. As stated, our Rule 216 provides that requests to admit will be deemed admitted if the party to whom they are directed does not "timely serve upon the party requesting the admission" either a sworn statement denying the matters at issue or written objections. The inverse is implicit in the rule–requests will not be deemed admitted if the responding party serves a proper response within 28 days after service. If Rule 3.1(c) is read to compel a contrary conclusion, then it impermissibly imposes a greater burden on a party responding to requests for admission than that required by Supreme Court Rule 216, and the local rule must yield. See *Finley*, 119 Ill. 2d at 494-95. We therefore hold that the filing requirement contained within Local Rule 3.1(c) conflicts with both Rule 216 and *Bright*. A violation of this filing requirement cannot form the basis for striking a party's response to a Rule 216 request to admit.

We also note that defendants attempt to raise other issues in their brief to this court. While we have reviewed the circuit court's orders to the extent that those orders gave rise to the certified question (*Bright*, 166 Ill. 2d at 208), we find that the other proposed issues fall outside the proper scope of our review of the certified question under Rule 308. See *Jones v. City of Carbondale*, 217 Ill. App. 3d 85, 88 (1991) (and cases cited therein).

As a final matter, we observe that the rulings which led to the circuit court's consideration of defendants' motion to strike plaintiff's responses to its request to admit were made without the benefit of our opinion today. In light of our holdings, plaintiff's responses to defendants' request for admission were not deficient under Rule 216. Accordingly, any Rule 183 good-cause analysis is now moot. We

remand this cause to the circuit court with directions to allow plaintiff's original responses to defendants' request for admission to stand, as they are compliant with the requirements of our Rule 216. We also direct the circuit court to allow plaintiff's cause of action to proceed.

CONCLUSION

For the foregoing reasons, we answer the certified question in the negative. Accordingly, we reverse the judgment of the appellate court. We remand this cause to the circuit court with directions and for further proceedings consistent with this opinion.

*Reversed and remanded with directions.*

CHIEF JUSTICE THOMAS took no part in the consideration or decision of this case.