# Illinois Official Reports

## Appellate Court

---

### *In re Detention of Carpenter*, 2015 IL App (1st) 133921

---

| | |
|---|---|
| Appellate Court Caption | *In re* DETENTION OF JERMAINE CARPENTER (The People of the State of Illinois, Plaintiff-Appellee, v. Jermaine Carpenter, Defendant-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-13-3921 |
| Filed | August 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-80002; the Hon. Timothy J. Joyce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel T. Coyne, Matthew M. Daniels, and Michael R. Johnson, all of Chicago Kent Law Offices, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and John R. Schleppenbach, Assistant Attorneys General, of counsel), for the People. |
| Panel | PRESIDING JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Justices Pierce and Liu concurred in the judgment and opinion. |

**OPINION**

¶ 1    On August 16, 2013, following a bench trial, the circuit court entered judgment finding defendant Jermaine Carpenter a sexually violent person subject to commitment under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2010)). Following a dispositional hearing on August 28, 2013, defendant was committed to institutional care in a secure facility until further order of the court pursuant to the Act. 725 ILCS 207/40(b)(2) (West 2012). Defendant now appeals the judgment of the circuit court, arguing that the circuit court should be reversed and the matter remanded for a new trial because the court erred by denying defendant's motion to appoint an evaluator of his own choosing before the probable cause hearing. Defendant also argues that reversal and remand are proper because the court erred in excusing the State's untimely responses to defendant's requests to admit and denying defendant's motion to deem those facts admitted. For the following reasons, we affirm the judgment of the circuit court.

¶ 2                               I. BACKGROUND

¶ 3    On March 16, 2009, one day before defendant's scheduled release from prison on mandatory supervised release, plaintiff People of the State of Illinois (the State), filed a petition for sexually violent person commitment pursuant to the Act (725 ILCS 207/40 (West 2008)), seeking to have defendant committed to the Illinois Department of Human Services (Department) as a sexually violent person. The State alleged that defendant had been convicted of attempted aggravated criminal sexual abuse (720 ILCS 5/12-16(d) (West 2004)) and sentenced to three years' imprisonment. The State attached a sexually violent person evaluation report from Dr. Ray Quackenbush dated March 9, 2009, setting forth the finding that defendant suffered the mental disorders of paraphilia, not otherwise specified, with mixed features and antisocial personality disorder and the opinion that defendant was dangerous to others and it was substantially probable that he would engage in acts of sexual violence. The court ordered a probable cause hearing for March 18, 2009.

¶ 4    On March 18, 2009, the State was prepared to proceed with the probable cause hearing and present the testimony of Dr. Quackenbush, and defendant appeared and the court appointed counsel. Defendant waived the statutory requirement that the probable cause hearing be held within 72 hours. The court granted defendant a continuance of two weeks for appointed counsel to investigate the case and confer with defendant. The parties returned for several status hearings, with defendant waiving the 72-hour probable cause requirement and continuing the matter each time.

¶ 5    On June 24, 2009, defendant filed a motion for an order appointing an expert evaluator on his behalf prior to the preliminary hearing. Specifically, defendant stated that it was critical to have his own expert at the preliminary hearing stage and that he had contacted Dr. Luis Rosell, Psy.D., who was willing to evaluate defendant in a timely fashion. That same day the circuit court denied defendant's motion, stating that it had already ruled upon that issue and opining that the Act did not provide for appointment of a defendant's expert before the probable cause hearing. The court reasoned that, with the requirement that the preliminary hearing be held within 72 hours, it would be impossible to meet that deadline if a defendant's expert had to be appointed, examine defendant, and file a report all within that

expedited timeframe. The court concluded that "It's only a probable cause hearing. If there is a finding of probable cause, then you get an expert."

¶ 6 The parties returned to court on July 8, 2009, for the probable cause hearing, but the State's witness was not present and a continuance was entered. Defendant registered complaints concerning his treatment at the detention facility and also with his representation, asserting that he wanted to find his own counsel. Over the next two years, counsel withdrew and was replaced by new appointed counsel. Several motions were ruled upon, including a motion to reconsider the decision denying the appointment of an expert to defendant prior to the probable cause hearing.

¶ 7 On April 14, 2011, the circuit court held the probable cause hearing. The State presented Dr. John Arroyo, who testified that after Dr. Quackenbush had retired and moved out of state, he reviewed defendant's medical file and his Department records, but testified that defendant refused to be interviewed. Dr. Arroyo prepared a written report that was admitted into evidence. Dr. Arroyo further testified to defendant's criminal history and disciplinary violations while in custody that evidenced a long history of sexual misconduct and assaults as well as violent behavior.

¶ 8 Dr. Arroyo noted that defendant had not received any treatment while incarcerated or in custody of the Department. Based on his review of this information and the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR), Dr. Arroyo diagnosed defendant as having paraphilia, not otherwise specified (NOS), nonconsent and antisocial personality disorder. Based on actuarial risk assessment tools, Dr. Arroyo concluded that defendant had a high and moderate-high risk of reoffending. Based on additional factors, Dr. Arroyo concluded that defendant was substantially probable to engage in future acts of sexual violence.

¶ 9 Dr. Arroyo admitted that he did not review Dr. Quackenbush's handwritten notes or audiotapes of previous interviews of defendant. He also admitted that antisocial personality disorder is insufficient in itself to support a sexually violent person determination and that defendant had not been diagnosed with paraphilia NOS until the examination pursuant to the sexually violent person petition. The parties rested and the circuit court found probable cause and continued defendant's detention until trial.

¶ 10 On April 20, 2011, defendant propounded requests to admit on the State by service on both the Assistant Attorney General and Assistant State's Attorney working on the case, stating:

> **"WARNING: If you fail to serve the response required by Rule 216 within 28 days after you are served with this paper, all the facts set forth in the requests will be deemed true and all the documents described in the requests will be deemed genuine.**
>
> 1. That the Respondent has not been diagnosed with any mental disorders while incarcerated in the Illinois Department of Corrections.
>
> 2. Mr. Carpenter has never had over a period of six months, recurrent, intense sexually arousing fantasies, sexual urges or behaviors involving sexual activity with persons who have not consented to such sexual activity.
>
> 3. Jermaine Carpenter, Respondent, has not engaged in sexual activity with non-consenting persons over a period of approximately twenty-six years.

4. Paraphilia Not Otherwise Specified (NOS) with Mixed Features is not a congenital mental disorder.

5. Antisocial Personality Disorder is not a congenital mental disorder." (Emphasis in original.)

¶ 11 The State did not respond to defendant's requests to admit until October 18, 2011, well after the 28-day deadline provided by rule. The State denied each request to admit. On January 19, 2012, the State moved for an extension of time to respond to respondent's request to admit pursuant to Illinois Supreme Court Rule 183.[1] The Assistant Attorney General on the case asserted in the motion that he did not realize that defendant's request to admit was contained within discovery requests sent to his office and overlooked the request until mid-October. Counsel stated that the failure to respond was neither willful nor intentional, but merely inadvertence. The State also provided explanations as to why it denied each of the five requests to admit and later argued that the broad policy goal of resolving cases on the merits over mere technicalities should be followed.

¶ 12 On March 28, 2012, the circuit court heard argument on the State's motion for extension of time. The Assistant Attorney General argued that, through the division of labor on the case with the State's Attorney's office, he was responsible for discovery matters. He asserted that he simply missed the discovery request when reviewing documents and immediately prepared and filed the response when he discovered his error. After reviewing case law, he determined that filing the motion for extension of time would be "the cleaner course of action, more prudent course of action."

¶ 13 In response, defendant sought to have the facts admitted based on the State's extensive delay in responding. During argument, the court asked defense counsel if defendant was prejudiced by the delay in filing and when counsel objected to the State's failure to respond. Defense counsel argued that it was not a defendant's burden to raise that issue. The court stated that sanctions were one possible response to such a delay, but admitting facts known not to be true was problematic and improper. Citing to *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007), the court stated that it may consider mistake, inadvertence, or attorney neglect in deciding whether good cause exists to allow untimely responses to questions to admit. Following the *Vision Point* court's statement of the broad overall policy goal of resolving cases on the merits rather than technicalities, the circuit court granted the motion for extension of time.

¶ 14 Prior to trial, the court-appointed expert for defendant, Dr. Diane Lytton, completed an evaluation of defendant and tendered her report to defense counsel who disclosed the report to the State. The parties withdrew their requests for a jury trial and the matter proceeded to a bench trial. The State offered the testimony of Dr. John Arroyo and Dr. Steven Gaskell who both opined that defendant suffered from paraphilia NOS, nonconsenting persons, a mental disorder under the Act, as well as personality disorder with antisocial traits. Both experts testified that defendant was a sexually violent person and substantially probable to engage in future acts of sexual violence. The certified statement of conviction of defendant was entered into evidence and the State rested.

---

[1] We note that the State's motion for extension of time in the record is erroneously date-stamped as received by the clerk of the circuit court on January 19, 2011.

¶ 15    Defendant presented Dr. Lytton who testified that she evaluated defendant after reviewing his corrections file and Department records and prepared a report of her evaluation. Dr. Lytton opined that defendant suffered from antisocial personality disorder and had problems with alcohol abuse. She did not believe that antisocial personality disorder was a mental disorder under the Act and did not predispose defendant to commit sexually violent acts. Dr. Lytton also testified that she did not diagnose defendant with paraphilia NOS nonconsent and further opined that such a diagnosis was not in the DSM-IV-TR and, therefore, did not exist. According to the risk assessment she conducted on defendant, Dr. Lytton concluded that defendant had a 17% risk of reoffending and it was not substantially probable that he would reoffend. The defense rested.

¶ 16    Following closing arguments, the circuit court entered judgment, finding defendant to be a sexually violent person under the Act. After a dispositional hearing, the circuit court concluded that defendant was not an appropriate candidate for release and ordered that defendant remain in institutional care until he is no longer sexually violent. On appeal, defendant argues that the circuit court committed reversible error in refusing to appoint an evaluator of defendant's choice prior to the probable cause hearing and in excusing the State's failure to timely respond to defendant's requests to admit.

¶ 17    II. ANALYSIS

¶ 18    A. Appointment of an Evaluator

¶ 19    Defendant argues that the circuit court erred in denying his motion to appoint an evaluator on his behalf before the probable cause hearing. Defendant maintains that section 25(e) of the Act provides a respondent to a petition by the State under the Act the right to be examined and evaluated by an expert on his behalf when he is subject to an evaluation by the State's expert. Proceedings under the Act are civil in nature and, where the Act is silent, the Civil Practice Law (735 ILCS 5/2-101 *et seq.* (West 2010)), governs. *People v. Coyne*, 2014 IL App (1st) 123105, ¶¶ 11-14. Accordingly, following the fundamental rule of statutory construction, we first consider the plain language of the statute to determine if it clearly and unambiguously provides the right asserted by defendant. *Id.* ¶ 13. We consider the words and phrases of a statutory enactment as a whole and do not rewrite or depart from the plain language provided by the General Assembly. *In re Commitment of Weekly*, 2011 IL App (1st) 102276, ¶ 38.

¶ 20    Under the Act, a person within 90 days of discharge or entry into mandatory supervised release from a sentence imposed upon a conviction for a sexually violent offense may face commitment by petition of the State. *In re Detention of Anders*, 304 Ill. App. 3d 117, 120 (1999). The petition must allege that the person was convicted of a sexually violent offense, has a mental disorder, and is dangerous to others because the person's mental disorder creates a substantial probability that he will in engage in sexual violence. 725 ILCS 207/15(b) (West 2010). After the petition is filed, the circuit court must hold a probable cause hearing within 72 hours, but may grant a continuance of no more than 7 days upon the motion of a respondent. 725 ILCS 207/30(b) (West 2010). If the circuit court determines there is probable cause to believe the person is a sexually violent person, the court must order the person transferred to a facility for an evaluation and a trial must be subsequently held to determine if the person is a sexually violent person subject to commitment. 725 ILCS

207/30(c) (West 2010). A trial is to follow within 120 days of the probable cause determination, unless the parties agree otherwise. 725 ILCS 207/35 (West 2010).

¶ 21    Section 25 of the Act sets forth the rights of persons subject to a petition to commit including service of the petition, notice of all hearings and, similar to rights of criminal defendants, the right to be represented by counsel, remain silent, present and cross-examine witnesses, and have a jury trial if requested. 725 ILCS 207/25(a)-(d) (West 2010). Of particular relevance to this case, section 25(e) of the Act provides in full:

> "Whenever the person who is the subject of the petition is required to submit to an examination under this Act, he or she may retain experts or professional persons to perform an examination. The State has the right to have the person evaluated by an expert chosen by the State. All examiners retained by or appointed for any party shall have reasonable access to the person for the purpose of the examination, as well as to the person's past and present treatment records and patient health care records. If the person is indigent, the court shall, upon the person's request, appoint a qualified and available expert or professional person to perform an examination. Upon the order of the circuit court, the county shall pay, as part of the costs of the action, the costs of a court-appointed expert or professional person to perform an examination and participate in the trial on behalf of an indigent person." 725 ILCS 207/25(e) (West 2010).

¶ 22    Defendant argues that the plain language of the first sentence of section 25(e) clearly states that when he was required to submit to an examination by Dr. Quackenbush, he was afforded the right to retain his own expert under section 25(e). The circuit court found defendant to be indigent and later appointed Dr. Lytton on defendant's behalf when he was required to submit to the examination by Dr. Gaskell. Defendant contends that the plain language of the statute required the circuit court to grant his motion to appoint an evaluator "whenever" he was required to submit to an evaluation, including the pre-probable cause hearing examination by Dr. Quackenbush. Defendant further argues that he was prejudiced by this error because he was denied not only the evaluation, but also services of his requested first expert before the probable cause hearing.

¶ 23    We agree with the State that the circuit court properly determined that the General Assembly did not contemplate the appointment of an evaluator on behalf of a person subject to a petition until after the probable cause hearing and in preparation for a trial. Read in its entirety, the Act clearly supports this conclusion. We further agree that the case law concerning the issue of probable cause hearings under the Act also supports this conclusion.

¶ 24    While the wording of section 25(e) could be read to support defendant's argument in isolation, the plain language of the section read with the remainder of the Act does not support this conclusion. First, the end of that section indicates that the appointed expert is to perform an examination and participate at trial. As highlighted by the circuit court, the 72-hour timeframe included for holding a probable cause hearing does not support defendant's assertion that this provision of section 25(e) applies to the probable cause hearing. Moreover, under the Act, if a probable cause determination is made, "the court shall order that the person be taken into custody if he or she is not in custody and shall order the person to be transferred within a reasonable time to an appropriate facility for an evaluation as to whether the person is a sexually violent person." 725 ILCS 207/30(c) (West 2010).

¶ 25　　Our supreme court considered the quantum of evidence necessary to support a probable cause determination under the Act and the scope of such a hearing in *In re Detention of Hardin*, 238 Ill. 2d 33 (2010). The court found that the provisions of section 35 of the Act applied to trials and not probable cause hearings and adopted the standards followed by the Wisconsin Supreme Court under a similar statutory framework. *Id.* at 47-48, following *State v. Watson*, 595 N.W.2d 403 (Wis. 1999). The court noted that "the intended purpose of a probable cause hearing in a SVP proceeding" is "to be preliminary in nature, a 'summary proceeding to determine essential or basic facts as to probability' and 'is "concerned with the practical and nontechnical probabilities of everyday life" ' while remaining cognizant of the respondent's liberty rights." *Id.* at 52 (quoting *Watson*, 595 N.W.2d at 420, quoting *State v. Dunn*, 359 N.W.2d 151, 154 (Wis. 1984)). Therefore, the probable cause hearing is not a forum to choose between conflicting facts or inferences and the same requirements and protections provided at a full trial are not involved.

¶ 26　　Reading the Act in its entirety, and considering the purpose and scope of a probable cause hearing, it is the required examination of section 30, which follows the probable cause hearing, that the requirement of appointing a defense expert evaluator under section 25(e) applies. This interpretation is supported by the logic of the speedy hearing requirement and subsequent requirements for trials pursuant to the Act, as well as the general scope of probable cause hearings under Illinois law. Accordingly, the circuit court did not err in denying defendant's request to appoint an evaluator before the probable cause hearing.

¶ 27　　　　　　　　　　　　B. Motion to Extend Time to Respond

¶ 28　　Defendant also argues that the trial court erred in granting the State's motion to extend time to respond to requests to admit pursuant to Illinois Supreme Court Rule 183, which provides, in full: "The court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. S. Ct. R. 183. Under the plain language of the Rule, and consistent with case law, circuit courts are vested with discretion over the course and conduct of pretrial discovery. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 344-45 (2007). Accordingly, we consider whether the circuit court abused its discretion in granting the State's motion to extend time to answer defendant's requests to admit.

¶ 29　　The *Vision Point* court considered the scope of inquiry a circuit court may engage in when determining whether good cause exists to support a party's motion for extension pursuant to Rule 183 to respond to a request to admit. *Id.* at 347. The court stated that a circuit court may consider all of the circumstances of a case in making the good cause determination. *Id.* The court noted that the movant bears the burden of sustaining the grounds of the motion and that mistake, inadvertence, or attorney neglect on the part of the movant could be the basis of a good-cause argument. *Id.* at 350-51.

¶ 30　　Defendant argues that the circuit court improperly relied upon *Sims v. City of Alton*, 172 Ill. App. 3d 694 (1988) and *People v. Strasbaugh*, 194 Ill. App. 3d 1012 (1990), in granting the State's motion because those cases have been partially overruled and, to the extent they are still good law, are distinguishable. However, as the State argues, the circuit court addressed these cases in its consideration of defendant's motion to deem facts admitted and

grounded its holding on the State's motion on the good cause determination as provided for in *Vision Point.*

¶ 31  We cannot say that the circuit court abused its discretion in making this determination. The Assistant Attorney General humbly took responsibility for his inadvertence and error in not timely responding to the motion. There is no evidence of wrongdoing or prejudice and counsel demonstrated this to the court. Following the policy repeated in *Vision Point* of deciding the matters before the court on the merits, the circuit court accepted the State's argument and found good cause that is clearly supported under the ruling in *Vision Point*. Accordingly, we affirm the judgment of the trial court.

¶ 32  III. CONCLUSION

¶ 33  Accordingly, we affirm the judgment of the Circuit Court of Cook County.

¶ 34  Affirmed.