# Illinois Official Reports

## Appellate Court

---

*Jones v. State Farm Mutual Automobile Insurance Co.*, 2018 IL App (1st) 170710

---

| | |
|---|---|
| Appellate Court Caption | TERRELL JONES, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0710 |
| Filed | May 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-716; the Hon. John C. Griffin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael O'Malley Kurtz, of Chicago, for appellant.<br><br>Frederick J. Sudekum III, Florence M. Schumacher, and Siobhan L. Dower, of Sudekum, Cassidy & Shulruff, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice Gordon concurred in the judgment and opinion. |

**OPINION**

¶ 1    Generally, if a party to an action in the circuit court is sent to mandatory arbitration and does not prevail—or does not prevail to its satisfaction—that party may reject the award and demand a trial. Illinois Supreme Court Rule 93 (eff. Jan. 1, 1997) gives that party 30 days after the filing of the award to file a rejection. Since 2014, by local rule, the circuit court of Cook County has instituted a mandatory arbitration program (for certain commercial cases valued at $75,000 or less) that allows a party only *seven* business days to reject the arbitration award and demand.

¶ 2    The threshold question here is whether that local rule, seemingly in conflict with an Illinois Supreme Court rule, is thus invalid. We hold that the rule is valid because the Illinois Supreme Court authorized the Cook County mandatory arbitration program and thus approved any deviations between that program's rules and the supreme court's rules.

¶ 3    We further hold that plaintiff, who failed to object within seven day of the award's entry, is thus bound by that judgment and may not voluntarily dismiss his lawsuit to avoid that result.

¶ 4    We affirm the circuit court's judgment in all respects.

¶ 5                                                    I
¶ 6                                                    A
¶ 7    Plaintiff Terrell Jones obtained an automobile insurance policy in October 2014 from defendant State Farm Mutual Automobile Insurance Company (State Farm). A few months later, plaintiff filed a claim, stating that his insured vehicle and personal property in the vehicle had been stolen. State Farm ultimately denied the claim, based on what it alleged to be intentional misrepresentations and concealments made by plaintiff concerning the claim.

¶ 8    Plaintiff filed a complaint in the circuit court of Cook County, alleging breach of contract and bad-faith denial of insurance coverage. The case was assigned to a commercial calendar in the circuit court's law division. After the bad-faith count was dismissed, the case was referred to commercial calendar mandatory arbitration. On December 2, 2016, an award in favor of defendant was entered. Nineteen days later, on December 21, 2016, plaintiff filed his rejection of that award.

¶ 9    On December 30, 2016, plaintiff moved to voluntarily dismiss the complaint. The court concluded that plaintiff's rejection of the award was untimely, and he thus did not have a right either to proceed to trial or to voluntarily dismiss his case. The court entered judgment on the arbitration award. This appeal followed.

¶ 10                                                  B
¶ 11   The mandatory arbitration system was first authorized by the General Assembly in 1986 (Pub. Act 84-844 (eff. Jan. 1, 1986) (adding Ill. Rev. Stat. 1987, ch. 110, ¶ 2-1001A, now codified at 735 ILCS 5/2-1001A)) and implemented the following year by the Illinois Supreme Court via the adoption of Illinois Supreme Court Rules 86 through 95. See *Stemple v. Pickerill*, 377 Ill. App. 3d 788, 790-91 (2007); *Kolar v. Arlington Toyota, Inc.*, 286 Ill. App. 3d 43, 45 (1996), *aff'd sub nom.*, *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.*, 179 Ill. 2d 271 (1997). See generally Ill. S. Ct. Rs. 86 to 95 (eff. June 1, 1987). Under Illinois Supreme Court Rule 86(a) (eff. Jan. 1, 1994), the supreme court may approve a judicial circuit's request to

implement a mandatory arbitration program and, in fact, may direct judicial circuits to do so even if they do not so request.

¶ 12    The circuit court of Cook County first chose to implement a mandatory arbitration program in 1990, with the approval of the Illinois Supreme Court. See *Cruz*, 179 Ill. 2d at 273. That program, governed by part 18 of the Circuit Court Rules of Cook County, is not at issue in this appeal. See generally Cook County Cir. Ct. Rs. 18.1 to 18.11.

¶ 13    In 2014, Cook County proposed a mandatory arbitration program for certain commercial cases. In an order dated September 25, 2014, the Illinois Supreme Court approved the request of the circuit court of Cook County to implement a two-year pilot program of mandatory arbitration for commercial cases assigned to the commercial calendar section of the law division, where the amount in controversy was $75,000 or less. See Ill. S. Ct., M.R. 9166 (eff. Oct. 1, 2014).

¶ 14    Following the supreme court's approval, the local rules implementing this program were adopted by a majority of the judges of the circuit court of Cook County on November 26, 2014, and made effective December 1, 2014. See Cook County Cir. Ct. R. 25.17 (Dec. 1, 2014). The rules are found in part 25 of the Circuit Court Rules of Cook County, titled "Law Division Mandatory Arbitration, Commercial Calendar Section." Cook County Cir. Ct. Rs. 25.1 to 25.17 (Dec. 1, 2014).

¶ 15    Among these rules in part 25, local rule 25.11 provided that "[e]ither party may reject the [arbitration] award if the rejecting party does so within seven business days after receiving the notice of the award from the Administrator." Cook County Cir. Ct. R. 25.11 (Dec. 1, 2014).

¶ 16    Roughly two years later, the Illinois Supreme Court issued an order providing that the two-year pilot program "shall continue on a permanent basis until further order of the Court" and that it "shall continue to be administered through local rules." Ill. S. Ct., M.R. 9166 (eff. Oct. 1, 2016).

¶ 17    It is undisputed that since the adoption of local rule 25.11 in 2014, the language of that rule has remained the same—it has always provided for a seven-business-day window for rejecting arbitration awards in these Cook County commercial cases.

¶ 18                                    II

¶ 19                                    A

¶ 20    The first issue on appeal is whether the trial court erred in denying, as untimely, plaintiff's rejection of the arbitration award. Specifically, plaintiff claims that local rule 25.11's seven-day window is invalid because it conflicts with the provisions of Illinois Supreme Court Rule 93(a) (eff. Jan. 1, 1997), which provides a disappointed party 30 days to reject an award. Our review is *de novo*, as our task is to interpret local and supreme court rules and determine their compatibility. See *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 342 (2007).

¶ 21    Like any other statute, ordinance, or rule, local court rules have the force of law and are presumed to be valid unless the challenging party carries its burden of establishing otherwise. See, *e.g.*, *Premier Electrical Construction Co. v. American National Bank of Chicago*, 276 Ill. App. 3d 816, 834 (1995); *People v. Joseph*, 113 Ill. 2d 36, 41 (1986); *Eastman Kodak Co. v. Fair Employment Practices Comm'n*, 86 Ill. 2d 60, 71 (1981).

¶ 22    Plaintiff's argument is straightforward. Illinois Supreme Court Rule 86(c) (eff. Jan. 1, 1994) provides that "[e]ach judicial circuit court may adopt rules for the conduct of arbitration

proceedings *which are consistent with these rules*." (Emphasis added.) Likewise, Illinois Supreme Court Rule 21(a) (eff. Dec. 1, 2008), speaking more generally to all local rules adopted, requires that local rules be "consistent with" Illinois Supreme Court rules. Cook County's local rule 25.11 (Cook County Cir. Ct. R. 25.11 (Dec. 1, 2014)), providing only seven business days to reject an arbitration award, is plainly inconsistent with Illinois Supreme Court Rule 93(a) (eff. Jan. 1, 1997), which requires a rejection "[w]ithin 30 days after the filing of an award." Thus, plaintiff reasons Illinois Supreme Court Rule 93 trumps local rule 25.11 and the latter's seven-business-day deadline may not be validly enforced against plaintiff.

¶ 23    Plaintiff is correct that local rule 25.11 is inconsistent with Illinois Supreme Court Rule 93(a). No principle of construction could allow us to read a seven-business-day deadline as compatible with a 30-day one. Nor is there any doubt that a local rule must yield to a conflicting Illinois Supreme Court rule. *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 491 (1988); *Phalen v. Groeteke*, 293 Ill. App. 3d 469, 470-71 (1997).

¶ 24    State Farm's response is just as simple: Cook County's local rules for this arbitration program, including local rule 25.11, are valid because the Illinois Supreme Court said so—at least once, if not twice. The supreme court first approved the implementation of this mandatory arbitration program in 2014, as a pilot program, and then ordered its permanent implementation in 2016. That approval, says State Farm, subsumed not only the mandatory arbitration program in general but the specific local rules governing it, as well.

¶ 25    If State Farm is correct that the supreme court approved these local rules, and not just the mandatory arbitration program generally, our inquiry is at an end. There is no question that the supreme court has the authority to permit or mandate the implementation of a court program that otherwise would be incompatible with its own rules.

¶ 26    The Illinois Constitution vests the supreme court with general administrative and supervisory authority over all courts. *People v. Peterson*, 2017 IL 120331, ¶¶ 29, 31 (supreme court "retains primary constitutional authority over court procedure"); Ill. Const. 1970, art. VI, § 16. This authority "extends to 'the adjudication and application of law and the procedural administration of the courts.' " *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 470 (2004) (quoting *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997)). Its authority is " ' "unlimited in extent" ' " and " ' "undefined in character." ' " *People v. Lyles*, 217 Ill. 2d 210, 217 (2005) (quoting *McDunn v. Williams*, 156 Ill. 2d 288, 302 (1993)). It permits the court to take action that is otherwise inconsistent with Illinois Supreme Court rules. *McDunn*, 156 Ill. 2d at 301 (supervisory authority is "extraordinary power" that is "hampered by no specific rules or means for its exercise" (internal quotation marks omitted)).

¶ 27    For example, though Illinois Supreme Court Rule 367 (eff. Feb. 1, 1994) provides that an appellate court loses jurisdiction of an appeal if no petition for rehearing is filed within 21 days after judgment, the supreme court, in its discretion, could reinstate the appeal and allow a late petition for rehearing. *Lyles*, 217 Ill. 2d at 216-17. The appellate court may not excuse noncompliance with Rule 367, but the supreme court reserves the supervisory authority to do so where appropriate. *Id.* Likewise, though the appellate court could not allow a late notice of appeal in light of the applicable Illinois Supreme Court rules on direct criminal appeals, the supreme court, in the exercise of its supervisory authority, could. See *People v. Moore*, 133 Ill. 2d 331, 339-40 (1990); *Lyles*, 217 Ill. 2d at 217 (discussing *Moore*).

¶ 28    The supreme court possesses no less authority to excuse noncompliance with Rule 93's 30-day rejection period than it did in excusing noncompliance with Rule 367 or

noncompliance with its rules governing the timing of criminal appeals. We find nothing in the Illinois Constitution or in precedent suggesting that our supreme court lacks the authority to approve a circuit's mandatory arbitration program even if, as here, one or more of the provisions of the program were incompatible with certain Illinois Supreme Court rules.

¶ 29     But plaintiff says that, even if the supreme court had the authority to approve these local Cook County rules, there is no indication that, in fact, it did so. In plaintiff's view, the supreme court did "nothing more than authorize the creation of a program" and did not specifically approve Cook County's local rules for that program.

¶ 30     The initial order the supreme court entered on September 25, 2014, reads, in full:

> "Effective October 1, 2014, the request of the Circuit Court of Cook County for approval of a mandatory arbitration pilot program for commercial cases assigned to the Commercial Calendar Section of the Law Division where the amount in controversy is $75,000 or less is approved. The program is approved as a two-year pilot program. The program will be administered through local rules." Ill. S. Ct., M.R. 9166 (eff. Oct. 1, 2014).

¶ 31     As plaintiff notes, the order does not specify whether Cook County's "request" included a set of proposed rules, as opposed to a more general request for this mandatory arbitration program, rules unseen and unknown. And the local rules themselves were not adopted by the circuit court of Cook County until two months after the supreme court's order—November 26, 2014—which only makes sense, as there would have been no reason to even consider formally adopting rules until the supreme court had given the program the green light. Still, as plaintiff argues, there is no affirmative indication that the supreme court was presented with any proposed rules regarding this pilot program before the supreme court approved the program. We have been directed to no source answering this question one way or the other, nor have we found any independently.

¶ 32     But for the reasons we explain below, plaintiff has not carried his burden of demonstrating that the supreme court did not approve these Cook County local rules.

¶ 33     First, Illinois Supreme Court Rule 21(a) (eff. Dec. 1, 2008) requires that, when a judicial circuit adopts rules, those local rules "shall be filed with the Administrative Director within 10 days after they are adopted." The "administrative director," or the director of the Administrative Office of the Illinois Courts (AOIC), is appointed by the supreme court, reporting directly to the chief justice, and is "generally responsible for the enforcement of the rules, orders, policies and directives of the Supreme Court and the chief justice relating to matters of administration." Ill. S. Ct. R. 30(b) (eff. July 1, 2017); see also Ill. Const. 1970, art. VI, § 16. So at the very least, the supreme court received the rules within 10 days of their adoption—that is, in December 2014—if not directly, then through its administrative arm, the AOIC.

¶ 34     And second, as we have noted, after the program had been up and running for two years, the supreme court issued an order making the program permanent. See Ill. S. Ct., M.R. 9166 (eff. Oct. 1, 2016) (directing that Cook County's two-year pilot program "shall continue on a permanent basis until further order of the Court"). The order also directed that the program "shall continue to be administered through local rules." *Id.*

¶ 35     The supreme court, in that 2016 order, could have directed Cook County to follow the Illinois Supreme Court rules directly or to adopt rules that were consistent with the relevant

supreme court rules to the letter. If the supreme court had been concerned with the fact that certain of these local rules were inconsistent with the supreme court mandatory arbitration rules, it defies belief that the court would have passed on the opportunity to say so at that time.

¶ 36    The only other possible explanation is that the supreme court did not *know* that these local rules were incompatible with the Illinois Supreme Court rules when it ordered the program's permanent implementation in 2016. Plaintiff's counsel assured us, at oral argument, that plaintiff is not making that claim. And for good reason: the supreme court carefully oversees the mandatory arbitration programs in the various circuits, in various ways.

¶ 37    For example, the AOIC's court services division includes a program unit, which is responsible for "[o]versight and support of all Mandatory Arbitration Programs, including the guidance and collection of arbitration program statistics." See *Administrative Office Divisions-Court Services*, Illinois Courts, http://www.illinoiscourts.gov/Administrative/ CtServ.asp (last visited Apr. 18, 2018). The supreme court has also created the Alternative Dispute Resolution Coordinating Committee (ADR Committee), which "monitors and assesses court-annexed mandatory arbitration and civil mediation programs approved by the Supreme Court" and, "[a]long with the [AOIC] *** tracks statistics for each ADR program to monitor program effectiveness and trends." Mark S. Goodwin, *Alternative Dispute Resolution Coordinating Committee*, in 2016 Annual Report of the Illinois Courts Administrative Summary 21 (2016), http://www.illinoiscourts.gov/SupremeCourt/AnnualReport/2016/ 2016_Admin_Summary.pdf. That committee "also makes recommendations for new or amended Supreme Court Rules that improve each program's process and performance." *Id.*[1]

¶ 38    Because the supreme court approved these local rules, notwithstanding their various conflicts with the Illinois Supreme Court rules, and because the supreme court's supervisory and administrative authority vested it with the authority to do so, local rule 25.11 is valid and enforceable. The circuit court correctly enforced that local rule in deeming plaintiff's rejection of the arbitration award, filed 19 days after its entry, untimely.

¶ 39                                                                B

¶ 40    We next consider whether the trial court, having denied plaintiff's rejection of the arbitration award as untimely, erred in denying plaintiff's motion to voluntarily dismiss his suit.

¶ 41    The right to a voluntary dismissal is not absolute. The supreme court has held, for example, that a motion to dismiss based on lack of diligence in service of process must be considered before allowing a plaintiff to voluntarily dismiss its action and refile it. *O'Connell v. St. Francis Hospital*, 112 Ill. 2d 273, 283 (1986). The court reasoned that the requirement of due diligence is embodied in Illinois Supreme Court Rule 103(b) (eff. July 1, 1982), while the right to voluntarily dismiss and refile are provided by statute (Ill. Rev. Stat. 1983, ch. 110, ¶ 2-1009, 13-217), and the supreme court's rule controlled over the statutory provisions. *O'Connell*, 112 Ill. 2d at 281 (" '[W]here a rule of this court on a matter within the court's authority and a statute on the same subject conflict, *the rule will prevail*.' " (Emphasis in original.) (quoting

---

[1]We may judicially notice reports and data officially provided by our supreme court and the AOIC. See, *e.g.*, *Gundlach v. Lind*, 353 Ill. App. 3d 677, 683 (2004); *Dawdy v. Union Pacific R.R.*, 207 Ill. 2d 167, 177 (2003).

*People v. Cox*, 82 Ill. 2d 268, 274 (1980))); see also *Bochantin v. Petroff*, 145 Ill. 2d 1, 6 (1991) (noting that *O'Connell* "was based on the conflict between the legislatively enacted Code of Civil Procedure and this court's rules").

¶ 42   As such, this court has twice held that a plaintiff cannot voluntarily dismiss a complaint to avoid an arbitration award it failed to reject. In *George v. Ospalik*, 299 Ill. App. 3d 888, 889 (1998), the plaintiffs did not reject an arbitration award and, more than 30 days later, sought to voluntarily dismiss their lawsuit, arguing that section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 1996)) allowed them to voluntarily dismiss at any time. We held that this right to dismiss was not absolute and that Illinois Supreme Court Rule 93(a) (eff. Jan. 1, 1997) required the plaintiffs to reject the award within 30 days of its entry. *George*, 299 Ill. App. 3d at 889-90. We agreed with the defendant that "allowing a voluntary dismissal without a rejection of the arbitration award would render the mandatory arbitration process meaningless." *Id.* at 890.

¶ 43   In a similar vein, we held that a plaintiff could not voluntarily dismiss a suit after waiving her right to reject an arbitration award by failing to appear at the arbitration. *Arnett v. Young*, 269 Ill. App. 3d 858, 861 (1995). Under Illinois Supreme Court Rule 91 (eff. June 1, 1993), the plaintiff's failure to appear at the arbitration constituted a waiver of her right to reject, and we reasoned that allowing the plaintiff to avoid this result through a voluntary dismissal would "obliterate the substance of Rule 91" and "permit a party to ignore the arbitration hearing without any cost to herself." *Arnett*, 269 Ill. App. 3d at 861. We also emphasized that the Illinois Supreme Court rule controlled over the statute in the event of conflict. *Id.*

¶ 44   In each of these cases, the disappointed plaintiff waived the right to reject the arbitration award, either by failing to do so within 30 days or by failing to attend the arbitration hearing. Likewise, here, plaintiff's failure to reject the arbitration award within seven business days constituted a waiver of his right under local rule 25.11(c). See Cook County Cir. Ct. R. 25.11(c) (Dec. 1, 2014) ("Failure to timely and properly reject the award as provided herein will constitute a waiver of the party's right of rejection.").

¶ 45   Plaintiff acknowledges this body of law but says that this case is different because here the voluntary-dismissal statute does not conflict with an Illinois Supreme Court rule—it conflicts with a local rule. It is true that Illinois Supreme Court Rule 21(a) (eff. Dec. 1, 2008) provides that local rules adopted by a circuit court shall be "consistent with these rules and the statutes of the State." The case law so provides, as well. See, *e.g.*, *People v. Atou*, 372 Ill. App. 3d 78, 82 (2007) (local court rules "may not abrogate, limit or modify existing law," including statutory speedy-trial provision (internal quotation marks omitted)). Thus, plaintiff reasons, local rule 25.11 must yield to the statutory right to voluntarily dismiss under section 2-1009.

¶ 46   But not all local rules need be approved by the supreme court. Mandatory arbitration programs, on the other hand, require supreme court approval. Ill. S. Ct. R. 86(a) (eff. Jan. 1, 1994). And our holding above—that the supreme court approved Cook County's local rules for this mandatory arbitration program—takes these local rules beyond the general doctrine that local rules cannot conflict with state statutes and into the related rule that the supreme court's authority over court procedure supersedes any conflicting statutory provision on the same subject. It makes no difference whether the supreme court exercised its authority to adopt a rule of its own on this subject or whether, as here, it entered an order approving a local rule on that subject. The supreme court's word in this regard is the final one.

¶ 47     We thus adhere to our holdings in *George* and *Arnett*. Plaintiff was not entitled to a voluntary dismissal to avoid an arbitration award he failed to timely reject. If we permitted plaintiff to avoid the consequences of his failure to timely reject the award via a voluntary dismissal, we would significantly impair the mandatory arbitration process. The traditional rule of waiver for failure to timely reject would have no teeth, easily thwarted by a nonsuiting of the action. It would also render the process quite one-sided, as a disappointed plaintiff would possess a statutory "out" to avoid an unfavorable arbitration award while leaving a defendant—having no similar ability to voluntarily dismiss—without the same option. When the supreme court approved these local rules, we cannot imagine it would have countenanced such a result.

¶ 48     The circuit court correctly denied plaintiff's motion to voluntarily dismiss the action.

¶ 49                                         III

¶ 50     The court's judgment is affirmed in all respects.

¶ 51     Affirmed.