2024 IL App (1st) 240235-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
September 30, 2024

No. 1-24-0235

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| DOMINIKA DANIEL, as Independent Administrator of the Estate of Malgorzata Daniel, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | Appeal from the Circuit Court of |
| v. | ) ) | Cook County |
| DONNA MEYER and NICOLAS PRATE, as Co-Executors of the Estate of Anthony Prate; DONNA MEYER, Individually and as Co-Trustee of the Anthony Prate Family Trust Number 11E025; NICOLAS PRATE, Individually and as Co-Trustee of the Anthony Prate Family Trust number 11E025; and AVA PRATE, | ) ) ) ) ) ) ) ) | No. 22 L 1032 The Honorable Mary Colleen Roberts, Judge Presiding. |
| Defendants-Appellants. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Pucinski dissented.

**ORDER**

¶ 1   *Held:*   The trial court abused its discretion in denying the defendants' motion to extend the time to reject a mandatory arbitration award, due to its failure to recognize the severe prejudice caused to the individual defendants by their attorney's reasonable mistake in determining rejection deadline.

¶ 2        This appeal involves a case for wrongful death and fraudulent transfer of assets that was

referred for mandatory arbitration and resulted in a $4 million award. After the defendants' counsel mistakenly failed to recognize that a local rule of the circuit court required that rejection of the arbitration award be filed within 14 days, the defendants moved for an extension of time to reject the award. The trial court denied the defendants' motion for an extension and entered judgment on the award. The defendants appeal. Because we agree that the trial court abused its discretion by denying their motion for an extension, we reverse and remand for further proceedings.

¶ 3                                                    BACKGROUND

¶ 4         The plaintiff's decedent, Malgorzata Daniel (Malgorzata), died on November 23, 2019. Prior to her death, Malgorzata had been in a relationship of some form with the defendants' decedent, Anthony Prate (Anthony). Anthony was charged with first degree murder in connection with her death, but he passed away on December 17, 2021, while awaiting trial on those charges.

¶ 5         The present case commenced on January 31, 2022, when the plaintiff filed a complaint for wrongful death against the then-unknown administrator of the Estate of Anthony Prate (Anthony's Estate). The three current defendants were later substituted. In the operative second amended complaint, both Anthony's sister Donna Meyer (Donna) and his son Nicolas Prate (Nicolas) are named as defendants in their individual capacities, in their capacities as co-executors of Anthony's Estate, and in their capacities as co-trustees of the Anthony Prate Family Trust No. 11E025 (Trust). Anthony's daughter Ava Prate (Ava) is also named in her individual capacity only.

¶ 6         The first count of the second amended complaint was brought only against Anthony's Estate, under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2018)). It alleged that Anthony had acted intentionally or negligently by stabbing Malgorzata with a knife, causing her to sustain over 20 stab wounds from which she died. Its prayer for relief sought damages in an amount in excess of $75,000 against Anthony's Estate (*i.e.*, against Donna and Nicolas in their capacities as

co-executors of Anthony's Estate). In this count, no damages were sought from any defendant in an individual capacity.

¶ 7        Counts II[1] and III of the second amended complaint both raised allegations that Anthony had fraudulently transferred assets to the defendants prior to his death. Count II alleged a common law claim that prior to his arrest, Anthony had added Nicolas and Donna to several of his bank accounts, thereby providing them with "unfettered access" to those accounts while he was incarcerated. He had also designated Donna as his power of attorney to access his financial accounts and assets during that time. It alleged that between November 26, 2019, and January 5, 2020, Anthony made telephone calls to the three defendants in which he expressed concerns that he faced civil liability for Malgorzata's death in a future lawsuit and instructed Nicolas, with Donna's assistance, to liquidate and transfer ownership of his assets into the names of one or more of the defendants. It alleged that, acting on those directions, Nicolas and Donna made at least eight transfers from Anthony's bank accounts into accounts solely in the names of Nicolas or Donna, totaling $471,612.87. It alleged that in January 2020, the assets from those transfers were then used to post a bail bond for Anthony in the amount of $300,000. It alleged that Anthony's last will and testament directed that all of his probate estate be given on death to the then-acting trustee of the Trust, that Nicolas and Donna had filed a cross-petition for probate of Anthony's will in which the approximate value of his probate estate was listed as $300,000, and that Nicolas had filed a claim in probate against Anthony's Estate in the amount of $300,000 that asserted Nicolas was the provider of the bail bond. Finally, count II alleged that if Nicolas were deemed the owner of the bail bond funds, Anthony's Estate would be rendered insolvent as a result of the transfers to Donna,

---

[1] The second count of the second amended complaint was mistitled as "Count III." We refer to it as Count II.

Nicolas, Ava, and the Trust.

¶ 8    Count III incorporated the same facts as count II and asserted a statutory claim under the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 2018)). Both counts II and III sought identical relief. The prayers for relief in both counts were directed at Donna individually and as co-trustee of the Trust, Nicolas individually and as co-trustee of the Trust, and Ava individually. The prayers for relief in both counts sought entry of the following judgment:

"a. Avoiding the transfers to the extent necessary to satisfy any judgment obtained by Plaintiff;

b. Granting preliminary injunctive relief against further disposition of the assets transferred, as well as other property of the Defendants;

c. Appointing a receiver to take charge of the [Trust]; and

d. For such other and further relief as the Court deems necessary and just."

No money judgment in any specific amount was sought in count II or III. The record does not reflect any motion in furtherance of the request for preliminary injunctive relief.

¶ 9    For pretrial case management, the case was assigned to a commercial calendar within the law division of the circuit court. On July 11, 2023, the trial court entered an order referring the case to the commercial calendar mandatory arbitration program. See Cook County Cir. Ct. R. 25.1 *et seq.* (eff. Apr. 1, 2021). No further information is found in the record on appeal as to a reason why this wrongful death case was referred to commercial calendar mandatory arbitration.

¶ 10    The record on appeal does indicate that, prior to the arbitration, the plaintiff supplied an arbitration submission that itemized the plaintiff's damages as follows: (1) between $2 million and $10 million on count I for wrongful death "for personal and pecuniary loss, including but not limited to loss of money, benefits, goods, services, companionship, society and emotional support

as a proximate result of the death of Malgorzata," and (2) $471,642.87 total on counts II and III for fraudulent transfer "based on transfers from Anthony Prate's bank accounts to accounts in Nicolas Prate and/or Donna Meyer's names in-between November 2019 and October 2020." Further, while no exhibits to the plaintiff's arbitration submission are included in the record on appeal, the submission indicates that the plaintiff submitted 11 pleadings and briefs on motions, 6 discovery deposition transcripts, and 33 exhibits (one of which included 23 sub-exhibits of the defendants' bank account records).

¶ 11    The arbitration hearing occurred on December 8, 2023, before arbitrator Ashley Rafael. No transcript of the hearing is contained in the record on appeal, but the arbitration award indicates that it lasted 3 hours and 45 minutes. Following the hearing, the arbitrator entered an award in favor of the plaintiff and against the defendants in the amount of $4 million. The court's arbitration administrator sent notice of the award by e-mail to the parties on December 12, 2023.

¶ 12    Upon receipt of that e-mail, counsel for the defendants immediately sent an e-mail to arbitrator Rafael, reiterating that the defendants had been sued on three counts in both individual and representative capacities and asking that the award be clarified as "to what claim(s) this award applies." Arbitrator Rafael responded by e-mail within the hour, stating, "[U]nfortunately, S.C. Rule 25 [*sic*] does not require a reasoned award. The award can be interpreted as to all claims and against all defendants." The court's arbitration administrator sent an e-mail to all parties 18 minutes after that stating, "Please remember to review CCR25 for information regarding what happens next. Deadlines for if you want to reject the decision are enforced so make sure you know where to go and what to do just in case."

¶ 13    No further action occurred on the case until January 10, 2024, when three documents were filed pertinent to this appeal. The first was a motion by the plaintiff for entry of judgment on the

arbitration award. The plaintiff's motion stated that neither party had filed a rejection of the arbitration award within 14 days of receiving notice of it, thereby resulting in waver of any party's right of rejection under Rule 25.11 of the Circuit Court of Cook County (Cook County Cir. Ct. R. 25.11 (eff. Apr. 1, 2021) (Local Rule 25.11).

¶ 14 The second document filed that day was the defendants' rejection of the arbitration award. The third document was a motion by the defendants requesting, *inter alia*, that the court either accept the rejection form filed that day or grant them an extension of time for filing a rejection of the arbitration award pursuant to Illinois Supreme Court Rule 183 (eff. Feb. 16, 2011). In that motion, the defendants' counsel acknowledged confusion about the rejection deadline being 14 days under Local Rule 25.11, rather than the 30 days allowed under Illinois Supreme Court Rule 93(a) (eff. Oct. 1, 2021). Counsel also referenced the requirement of Illinois Supreme Court Rule 86(c) (eff. Jan. 1, 1994) that circuit court rules adopted for the conduct of arbitration proceedings be "consistent with these rules" (*i.e.*, Illinois Supreme Court Rules 86 through 95, which govern mandatory arbitration proceedings in circuit courts). Counsel argued that she had attempted to comply with what she believed was the correct rejection deadline, and her confusion and desire not to cause prejudice to her client constituted good cause for the allowance of an extension.

¶ 15 Hearing on the two motions above occurred on January 17, 2024, at which time the trial court denied the defendants' motion to allow the belated rejection or to extend the time for filing it under Rule 183. In doing so, the trial court primarily relied upon the decision of this court upholding the validity of the shorter deadline set by the local rule despite its clear conflict with the 30-day deadline set forth in Supreme Court Rule 93(a). See *Jones v. State Farm Mutual Automobile Insurance Co.*, 2018 IL App (1st) 170710, ¶¶ 20-38. It also cited several e-mails sent to the defendants during the arbitration process reminding them to consult the local rules for the award-

rejection deadline. Accordingly, the trial court found that the defendants had failed to show good cause for an extension of the rejection deadline.

¶ 16    The trial court further rejected a request by the defendants' counsel, made at oral argument, that judgment be entered on the award in a manner consistent with the amounts that the plaintiff had sought from the defendants in their respective capacities in either the second amended complaint or her arbitration submission. The trial court reasoned that it did not have the authority to "carve up the arbitration award" in the manner requested by the defendants. The trial court therefore entered judgment on the award in the amount of $4 million in favor of the plaintiff and against the three defendants in their individual and representative capacities.

¶ 17    On January 18, 2024, the defendants filed an emergency motion to reconsider the order entered the previous day. That motion reiterated, *inter alia*, that the $4 million judgment entered by the court against Donna, Nicolas, and Ava in their individual capacities was 10 times the amount of damages that the plaintiff had sought from them in her arbitration submission. The defendants argued that this was an unreasonably harsh result to impose on them due to an honest mistake by their counsel about which rule provided the applicable deadline for rejecting the arbitration award.

¶ 18    On January 25, 2024, the trial court denied the defendants' emergency motion to reconsider. That same day, the plaintiff began collection proceedings against the defendants individually and issued third-party citations to their banks and employers. This appeal followed.

¶ 19                                                    ANALYSIS

¶ 20    On appeal, the defendants raise a variety of arguments assailing the trial court's entry of judgment on the arbitration award, which the trial court entered based upon the defendants' failure to file a rejection of the award within 14 days of receiving notice of it from the court's arbitration administrator. This 14-day rejection deadline is established by local rule as part of the law

division's mandatory arbitration program, which is intended for application in "commercial and personal injury cases assigned to the Law Division *** with damages of less than $50,000 and no retained expert witness as defined in Supreme Court Rule 213(f)(3)." Cook County Cir. Ct. R. 25.1 (eff. Apr. 1, 2021). Local Rule 25.11 governs the time for rejecting arbitration awards in such cases, providing that "[e]ither party may reject the award if the rejecting party does so within fourteen (14) calendar days after receiving the notice of the award from the Administrator." Cook County Cir. Ct. R. 25.11 (eff. Apr. 1, 2021). "Failure to timely and properly reject the Award as provided herein will constitute a waiver of the party's right of rejection." Cook County Cir. Ct. R. 25.11(c) (eff. Apr. 1, 2021).

¶ 21　　We begin with the defendants' argument that good cause existed for granting them an extension of the time to file a rejection of the award and that the trial court abused its discretion by denying their motion for an extension.

¶ 22　　Rule 183 governs extensions and states that the trial court, "for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." Ill. S. Ct. R. 183 (eff. Feb. 16, 2011). What constitutes "good cause" under this rule is a determination dependent on the facts of the case that is vested in the sound discretion of the trial court. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). In determining whether to grant an extension, a trial court may consider all objective, relevant evidence presented by the delinquent party with respect to why there is good cause for its failure to comply with the original deadline and why an extension of time should now be granted. *Id.* Mistake, inadvertence, or neglect by the moving party's attorney may be considered in evaluating good cause. *Id.* Absent an abuse of discretion, the decision of the trial court on this issue will not be disturbed on appeal.

*Id.* at 354. Abuse of discretion occurs when no reasonable person would take the view adopted by the court. *Armagan v. Pesha*, 2014 IL App (1st) 121840, ¶ 24.

¶ 23     Under the facts of this case, we agree with the defendants that the trial court abused its discretion by finding that they failed to show good cause to allow an extension of time to file a rejection of the arbitration award. Primarily, we find that the trial court failed to give appropriate consideration to the severity of the prejudice that the individual defendants would suffer due to what appears, by all accounts, to be an honest mistake by their attorney, caused in part by the circuit court's adoption of a rejection deadline by local rule that is in express conflict with supreme court rules.

¶ 24     As discussed above, defendants' counsel acknowledged when requesting the extension that she had mistakenly believed that the 30-day rejection deadline allowed under Illinois Supreme Court Rule 93(a) (eff. Oct. 1, 2021) applied in this case and that she had failed to realize that a shorter deadline of 14 days was set by Local Rule 25.11. The trial court found that good cause was not shown by this argument because (1) our decision in *Jones* was controlling "with respect to the argument related to the confusion" between Supreme Court Rule 93(a) and Local Rule 25.11, and (2) several e-mails from the circuit court's arbitration administrator provided the defendants' counsel with notice that Local Rule 25.11 was controlling.

¶ 25     We find that the trial court reached an unreasonable conclusion when it failed to recognize that an attorney acting in good faith could make an honest mistake in this context. We recognize that we have upheld the validity of the shorter deadline imposed by the local rule. See *Jones*, 2018 IL App (1st) 170710, ¶ 38. However, our doing so is not an endorsement that the circuit court's practice of maintaining a rejection deadline shorter than that set by state supreme court rule does not allow for good-faith confusion. Instead, we agree with the plaintiff's point that a "procedural

trap" of sorts exists in law division cases subject to mandatory arbitration by the circuit court's adoption of a local rule with a rejection deadline that is in clear conflict with the 30-day deadline set by Supreme Court Rule 93(a). The circuit court's adoption of a local rule with this deadline is also in ostensible violation of Illinois Supreme Court Rule 86(c) that allows circuit courts to "adopt rules for the conduct of arbitration proceedings *which are consistent with these rules*" (referring to Illinois Supreme Court Rules 86 through 95 governing mandatory arbitration in the state's circuit courts). (Emphasis added.) Ill. S. Ct. R. 86(c) (eff. Jan. 1, 2014). Accordingly, it is not inconceivable that a practitioner familiar with these supreme court rules could make an honest mistake in failing to recognize that a local rule exists with an inconsistent rejection deadline.

¶ 26 In *Jones*, we recognized that the rejection deadline in Local Rule 25.11 (which was then only 7 days) was clearly inconsistent with the 30-day deadline set forth in Supreme Court Rule 93(a), which would otherwise control over a conflicting local rule. *Jones*, 2018 IL App (1st) 170710, ¶ 23. However, we accepted the argument in that case that our supreme court must have implicitly approved the local rule's deviation from the supreme court rules' requirements in an exercise of its supervisory authority over all courts, when it authorized the law division's mandatory arbitration pilot program to continue on a permanent basis and ordered that the program " 'shall continue to be administered through local rules.' " *Id.* ¶¶ 24-38 (quoting Ill. S. Ct., M.R. 9166 (eff. Oct. 1, 2016)). Again, our recognition that an implicit exercise of supervisory authority must have occurred here is hardly a statement that this is a clear rule that allows no room for confusion by an attorney acting in good faith.

¶ 27 Furthermore, we also reject the trial court's reasoning that e-mails sent to the defendants by the circuit court's arbitration administrator provided adequate notice that Local Rule 25.11 was controlling as to the time for filing a rejection. Importantly, none of the arbitration administrator's

e-mails specifically referenced Local Rule 25.11 or the fact that a 14-day rejection deadline existed under local rule. One such e-mail was dated October 26, 2023, when the arbitration hearing was being scheduled. It states, "Counsel should review Circuit Court Rule 25 for information on the Law Division arbitration process." It then proceeds to discuss only the requirements for pre-hearing submissions. Another such e-mail, dated December 12, 2023, was sent following the exchange between defendants' counsel and arbitrator Rafael concerning the arbitration award's inconsistency with the prayers for the relief in the second amended complaint. *Supra* ¶ 12. That email stated, "Please remember to review CCR25 for information regarding what happens next. Deadlines for if you want to reject the decision are enforced to make sure you know where to go and what to do just in case." If either of these emails had explicitly referenced the 14-day rejection deadline set by local rule, this may have cured any confusion about the rejection deadline. As they did not, however, we find the trial court unreasonably relied on these emails as negating good cause for an extension.

¶ 28     Our recognition that a mistake can reasonably occur in this context is only one factor that leads us to conclude that an abuse of discretion occurred in this case. The more important factor here is that the trial court appears not to have considered the severity of the prejudice that the three individual defendants will suffer because of their attorney's mistake and the denial of an extension of the deadline to reject the award.

¶ 29     The prejudice here is that the arbitrator's award imposed liability on Donna, Nicolas, and Ava in their individual capacities and in an amount that was far beyond any relief that the plaintiff sought from them in either the second amended complaint or her arbitration submission. That award rendered Donna, Nicolas, and Ava, in their individual capacities, jointly and severally liable for $4 million in damages caused to the plaintiff by the wrongful death of Malgorzata. None of

these three defendants was alleged in the second amended complaint to have any individual liability for her wrongful death. Rather, the count of the second amended complaint alleging wrongful death sought to impose a money judgment only on Anthony's Estate. Donna and Nicolas were named in that count only in their capacities as co-executors of Anthony's Estate, not in their individual capacities. In turn, counts II and III for fraudulent transfer of assets did name the defendants individually (as well as naming Donna and Nicolas in their capacities as co-trustees of the Trust), but the primary relief sought in those counts was "[a]voiding the transfers to the extent necessary to satisfy any judgment obtained by the plaintiff." The fraudulent transfers alleged in the second amended complaint only totaled $471,612.87, which is consistent with the amount that the plaintiff sought in these counts in her arbitration submission. We find no suggestion that $4 million in fraudulent transfers occurred in this case for which these defendants should bear this amount of individual liability.

¶ 30    Nothing in the plaintiff's appellee brief indicates to us that the arbitrator's award imposing liability in the amount of $4 million on the individual defendants in this way can be justified on the merits. Instead, we believe the defendants have correctly characterized this as an unconscionable outcome that should not be allowed to stand. The trial court erred in failing to recognize the extent of harm to the individual defendants here and that granting an extension of time was necessary to avoid it. Accordingly, we reverse the trial court's order denying the defendants' motion for extension of time to reject the arbitration award and remand this case for further proceedings.

¶ 31                                CONCLUSION

¶ 32    For the foregoing reasons, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this decision. Upon remand, this cause should be sent to

the presiding judge of the law division for reassignment as a wrongful death case.

¶ 33      Reversed and remanded.

¶ 34      JUSTICE PUCINSKI, dissenting:

¶ 35      The local rule and our finding in *Jones* control.  The defendants missed the rejection deadline.

I would affirm.